**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re UNDER ARMOUR SECURITIES LITIGATION | ) ) ) | Civil No. 1:17-cv-00388-RDB |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |
| | ) | |
| KIRTAN PATEL, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil No. 1:19-cv-03209-RDB |
| | ) | |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNDER ARMOUR, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

[Caption continued on following page.]

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL

4827-1481-6176.v1

| | |
|---|---|
| PHILLIP KRAFT, Individually and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>    v.<br><br>UNDER ARMOUR, INC., et al.,<br><br>                 Defendants. | Civil No. 1:19-cv-03502-RDB<br><br>CLASS ACTION |
| JEFFREY WARONKER, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>    v.<br><br>UNDER ARMOUR, INC., et al.,<br><br>                 Defendants. | Civil No. 1:19-cv-03581-RDB<br><br>CLASS ACTION |

4827-1481-6176.v1

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................1

II.   PROCEDURAL HISTORY.....................................................................................2

III.  FACTUAL BACKGROUND ..................................................................................5

IV.   ARGUMENT...........................................................................................................9

     A.    The Related Actions Should Be Consolidated..........................................9

     B.    Aberdeen Should Be Appointed Lead Plaintiff of the 2019 Actions.....................11

          1.    This Motion Is Timely ................................................................12

          2.    Aberdeen Has the Largest Financial Interest in the Relief Sought by the Class ..................................................................13

          3.    Aberdeen Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure ....................................................................13

     C.    The Court Should Approve Aberdeen's Selection of Counsel ..............................15

V.    CONCLUSION......................................................................................................18

4827-1481-6176.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Cardinal Health, Inc. Sec. Litig.*,
No. 2:04-cv-00575-ALM (S.D. Ohio) .....................................................................................16

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................................15

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..................................................................................................14

*In re Cohen*,
586 F.3d 703 (9th Cir. 2009) ................................................................................................15

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)...................................................................................11

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................................16

*In re Enron Corp. Sec. Litig.*,
No. 4:01-cv-03624 (S.D. Tex.) ..............................................................................................16

*In re HealthSouth Corp. Sec. Litig.*,
No. 2:03-cv-01500-KOB-TMP (N.D. Ala.)...........................................................................16

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
No. 1:01-cv-01451-REB-KLM (D. Colo.) .............................................................................16

*In re Synergy Pharm. Inc. Sec. Litig.*,
2019 WL 6150713 (E.D.N.Y. Nov. 20, 2019).......................................................................10

*In re Under Armour Sec. Litig.*,
2019 WL 3892319 (D. Md. Aug. 19, 2019) ........................................................................3, 6

*In re UnitedHealth Group Inc. Sec. Litig.*,
No. 0:06-cv-01691-JMR-FLN (D. Minn.).............................................................................16

*Jones v. Pfizer, Inc.*,
No. 1:10-cv-03864-AKH (S.D.N.Y. Aug. 10, 2015).............................................................15

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
No. 1:02-cv-05893 (N.D. Ill.) ...............................................................................................16

4827-1481-6176.v1

**Page**

*Lefkoe v. Jos. A. Bank Clothiers*,
    2006 WL 8441739 (D. Md. Nov. 20, 2006) ......................................................................13, 15

*Tchatchou v. India Globalization Capital, Inc.*,
    2019 WL 1004591 (D. Md. Feb. 28, 2019) ...............................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)...............................................................................................................................1, 4
    §78t(a)...............................................................................................................................1, 4
    §78u-4 .....................................................................................................................................1
    §78u-4(a)(1) ..........................................................................................................................11
    §78u-4(a)(3)(A)......................................................................................................................12
    §78u-4(a)(3)(A)(i) .................................................................................................................11
    §78u-4(a)(3)(A)......................................................................................................................11
    §78u-4(a)(3)(B)................................................................................................................11, 12
    §78u-4(a)(3)(B)(i) ..............................................................................................................2, 11
    §78u-4(a)(3)(B)(ii) ...........................................................................................................1, 2, 9
    §78u-4(a)(3)(B)(iii)...........................................................................................................2, 12
    §78u-4(a)(3)(B)(iii)(I)(cc)......................................................................................................13
    §78u-4(a)(3)(B)(v) ............................................................................................................2, 15

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................................12, 13
    Rule 42(a)................................................................................................................................9
    Rule 60(b)(2)...........................................................................................................................4
    Rule 60(b)(6)...........................................................................................................................4
    Rule 62.1 .................................................................................................................................4

17 C.F.R.
    §240.10b-5 .......................................................................................................................1, 4, 9

4827-1481-6176.v1

## I.    PRELIMINARY STATEMENT

This Court has overseen securities fraud class action claims against Under Armour, Inc. and Kevin Plank on behalf of purchasers of Under Armour securities, alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, from the filing of the initial complaint in February 2017 until entry of judgment in September 2019.  Now pending before this Court are three additional related securities class action lawsuits, also on behalf of purchasers of Under Armour securities alleging violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 for the same or similar conduct.[1]

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*, Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("Aberdeen") – the existing Lead Plaintiff in the 2017 Action – moves for consolidation of the Related Actions, appointment as Lead Plaintiff with respect to the 2019 Actions, and approval of Aberdeen's selection of counsel.

The PSLRA requires courts to resolve consolidation before appointing a lead plaintiff in securities cases.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  As detailed herein and in motions presently before this Court (2017 Action ECF Nos. 107, 125; *Patel* ECF Nos. 3,7), the Related Actions should be consolidated because they assert nearly identical claims against common defendants on behalf of overlapping classes of Under Armour investors during overlapping class periods.

---

[1]    *See Patel v. Under Armour, Inc*., No. 1:19-cv-03209-RDB (D. Md.) (filed November 6, 2019); *Kraft v. Under Armour, Inc*., No. 1:19-cv-03502-RDB (D. Md.) (filed December 9, 2019); and *Waronker v. Under Armour, Inc.*, No. 1:19-cv-03581-RDB (D. Md.) (filed December 17, 2019) (collectively, the "2019 Actions").  The 2019 Actions, together with *In re Under Armour Sec. Litig*., No. 1:17-cv-00388-RDB (D. Md.) (the "2017 Action"), are referred to as the "Related Actions."

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  Here, Aberdeen respectfully submits that it should be appointed to serve as lead plaintiff with respect to the 2019 Actions because Aberdeen: (1) timely filed this motion; (2) has a substantial financial interest in the outcome of the Related Actions; and (3) is typical of the other members of the putative class and will continue to adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, Aberdeen has selected Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as lead counsel.  Robbins Geller possesses extensive experience prosecuting securities class actions and will continue to vigorously prosecute defendants for the benefit of all class members.  Aberdeen's selection of lead counsel should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  Additionally, Aberdeen has selected Silverman Thompson Slutkin & White LLC ("Silverman Thompson") as local counsel given its extensive experience in this District, as well as its familiarity with the Court's rules and procedures.  Accordingly, Aberdeen's motion should be granted.

## II.    PROCEDURAL HISTORY

On February 10, 2017, Brian Breece filed the initial complaint in the 2017 Action against Under Armour, CEO Plank, and CFO Molloy on behalf of investors in the Company's common stock between April 21, 2016 and January 20, 2017. *See* 2017 Action ECF No. 1.  Two additional complaints were filed by plaintiffs Jodie Hopkins and Ben Stenger on February 16, 2017 and March 2, 2017, respectively. *See Hopkins v. Under Armour*, No. 1:17-cv-00452-RDB (D. Md.); *Stenger v. Under Armour*, No. 1:17-cv-00611-RDB.

On March 23, 2017, the Court consolidated the *Breece, Hopkins,* and *Stenger* Actions. *See* 2017 Action ECF No. 3. On April 11, 2017, three motions for appointment as lead plaintiff were filed in the consolidated action. *See* 2017 Action ECF Nos. 4-6. Pursuant to the PSLRA, this Court appointed Aberdeen as Lead Plaintiff and approved its selection of counsel on April 26, 2017. *See* 2017 Action ECF No. 13.

After an initial round of defendants' motions to dismiss, the Consolidated Second Amended Complaint for Violations of the Federal Securities Laws ("SAC") was filed on November 16, 2018. *See* 2017 Action ECF. No. 78. The SAC alleged that between September 16, 2015 and January 30, 2017, Under Armour and CEO Plank made materially false and misleading statements and omissions regarding the truth about the dramatically declining demand for Under Armour's products. *Id.* On August 19, 2019, this Court dismissed the SAC with prejudice, concluding that while plaintiffs made sufficient factual allegations to plead material misrepresentations and omissions, they failed to adequately plead the requisite strong inference of scienter. *See In re Under Armour Sec. Litig.*, 2019 WL 3892319, at *10-*11 (D. Md. Aug. 19, 2019). The Court instead credited defendants' inference "that the Company, which had experienced years of robust growth continuing late into the Class Period, hit an unexpected slowdown." *Id.* at *10.[2]

Judgment in the 2017 Action was entered on September 9, 2019. *See* 2017 Action ECF No 101. Plaintiffs timely filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit. *See id.* ECF No. 103.

On November 3, 2019, *The Wall Street Journal* ("*WSJ*") published an article titled, "Under Armour Is Subject of Federal Accounting Probe." *See* 2017 Action ECF No. 106-4. According to the *WSJ* article, the U.S. Department of Justice ("DOJ") and the SEC are examining whether Under

---

[2]    Unless otherwise noted, all emphasis is added and citations are omitted.

4827-1481-6176.v1

Armour "shifted sales from quarter to quarter to appear healthier[.]" *Id.* The *WSJ* also revealed that both criminal and civil investigations have been ongoing since July 2017 and that the Company has, for over two years, been responding to "'requests for documents and information relating primarily to its accounting practices and related disclosures[.]'" *Id.*

On November 6, 2019, seizing on the revelation of the SEC and DOJ investigations, Kirtan Patel filed a putative securities class action complaint against Under Armour, Plank, Molloy, and other senior executives for violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 on behalf of Under Armour investors between August 3, 2016 and November 1, 2019. *See Patel* ECF No. 1.

On November 14, 2019, the *WSJ* published a follow-up article based on interviews with former Under Armour executives in its sales, logistics, merchandising, and finance divisions. *See* 2017 Action ECF No. 106-7. In the article, former Under Armour executives detail the scramble to "meet aggressive sales targets" and the practice of "borrowing business from future quarters" and that Under Armour did so in order to "mask slowing demand in 2016 for the company's athletic apparel." *Id.* "Former executives said pulling sales forward helped the sportswear company sustain its growth record, which employees knew was important to Mr. Plank." *Id.* **According to the article, emails show that Plank "knew about efforts to move revenue between quarters[.]"** *Id.*

On November 18, 2019, Aberdeen filed a motion for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1, and a motion for relief from the Court's September 9, 2019 judgment pursuant to Fed. R. Civ. P. 60(b)(2) and (6), arguing that the evidence revealed by the *WSJ* provided good cause for the Court to revisit its determination that plaintiffs are unable to plead scienter, and that further amendment would be futile. *See* 2017 Action ECF Nos. 105-106. Aberdeen simultaneously filed a motion to consolidate and to vacate the lead plaintiff deadline in *Patel. See*

4827-1481-6176.v1

2017 Action ECF No. 107; *Patel* ECF No. 3. The Court set an April 1, 2020 hearing date for all three of Aberdeen's November 18, 2019 motions.

On December 9, 2019, while Aberdeen's motion to consolidate was still being briefed, Phillip Kraft filed a "copy-cat" complaint against the Company, Plank, and several other Company officers that is nearly identical to Mr. Patel's complaint, and includes allegations against the same defendants during the same class period. *See Kraft* ECF No. 1.

On December 17, 2019, Jeffrey Waronker also filed a securities class action complaint against Under Armour, Plank, and several other Company officers, on behalf of Under Armour investors between **September 16, 2015** and November 1, 2019. *See Waronker* ECF No. 1.

## III.    FACTUAL BACKGROUND

At the heart of the Related Actions is Under Armour's scheme to mask slowing demand between late 2015 and early 2017 and its unsuccessful attempt to conceal that the Company's 20-plus quarter streak of at least 20% net revenue growth had come to an end.

Prior to September 16, 2015 – the start date of the class period alleged by the SAC and by the *Waronker* complaint – Under Armour built its success as a 20%+ "growth company" based on its premium brand image and reputation for state-of-the-art athletic performance. SAC, ¶¶5,142. Apparel is the Company's top revenue generator and North America by far its largest market (over 80% of net revenues). SAC, ¶30. In truth, by the spring of 2015, the Company's North American apparel business had stalled and an undisclosed "fundamental shift" had taken place in the Company's business. SAC, ¶55.

The 2017 Action and the *Waronker* Action both allege that defendants made misleading statements and omissions about the current and past state of Under Armour's core North American apparel business. *See* Table 1, *infra*. As the Court observed about the SAC, and equally applicable

4827-1481-6176.v1

to the *Waronker* Action: "Plaintiffs' allegations paint a picture that Plank, although he had access to contradictory information, recklessly told investors that Under Armour's core business was incredibly strong, profitable, and gaining market share." *Under Armour*, 2019 WL 3892319, at \*9-\*10. The "contradictory information" cited by the *Waronker* Action is the *WSJ* revelation that the Company "shifted sales from quarter to quarter to appear healthier, including to keep pace with their long-running streak of year-over-year 20% net revenue growth." *Waronker* ECF No. 1, ¶47. *Waronker* and the other two 2019 Actions also allege that the same contradictory information – as well as the undisclosed existence of the DOJ and SEC investigations – rendered statements about the Company's revenue recognition practices and sufficiency of internal controls false and misleading. *Waronker* ECF No. 1, ¶61; *Patel* ECF No. 1, ¶36; *Kraft* ECF No. 1, ¶36.

On January 10, 2016, Morgan Stanley issued a report detailing that beginning in the spring of 2015 the Company experienced slower growth in North American apparel sales, falling sales prices, and reduced market share. *See* SAC, ¶¶134-138, 260; *see also Waronker* ECF No. 1, ¶25. As a result of the information revealed to the market, the Company's Class A common stock dropped approximately 6.7% on unusually high trading volume. SAC, ¶260.

On May 3, 2016, the Company surprised investors by announcing the sudden departures of key senior executives. *See* SAC, ¶261. As a result, the Company's Class A common stock dropped approximately 7.5% on unusually high trading volume. *Id.* The Company's Class C common stock, which was issued to Class A common stock holders on a one-for-one basis after the market closed on April 7, 2016, also experienced a price decline as a result of this news, falling approximately 6.8% on unusually high trading volume. *Id.*

On May 31, 2016, Under Armour revealed that, contrary to the Company's positive statements and guidance raise just a month earlier, 2016 revenue and operating income would be

- 6 -

much lower than projected. SAC, ¶262. As a result of the information revealed to the market, the Company's Class A common stock and Class C common stock prices dropped approximately 3.9% and 3.6%, respectively, on unusually high trading volume. *Id.*

On July 26, 2016, the Company announced slowdowns in apparel sales growth, operating income, and net income. SAC, ¶¶186-190, 263. As a result of the information revealed to the market, the Company's Class A common stock and Class C common stock prices dropped approximately 5.1% and 3.6%, respectively, on unusually high trading volume. The drops were tempered by defendants' attempts to blunt the negative results by making misleadingly positive statements regarding the Company's sales demand and revenue growth, and their failure to disclose the true extent of financial difficulties facing the Company. *Id.*; *Waronker* ECF No. 1, ¶36.

On October 25, 2016, the Company revealed a further slowdown in North American apparel growth and compressed margins attributed to higher discounts, promotions, and liquidations. SAC, ¶264. As a result of this news, Under Armour's Class A common stock and Class C common stock prices dropped approximately 18.4% and 21.3%, respectively, on unusually high trading volume. *Id.* The Related Actions allege that defendants made contemporaneous materially false and misleading statements, reassuring investors that the Company's overall growth and demand were strong and stated that the Company's inventory position was healthier. SAC, ¶¶207-209; *Waronker* ECF No. 1, ¶36; *Patel* ECF No. 1, ¶¶21-22; *Kraft* ECF No. 1, ¶¶21-22.

On January 31, 2017, the Company shocked investors by announcing a severe slowdown in growth and dramatically reduced financial projections attributed to problems in the North American apparel business, as well as compressed margins, inventory growth, and the sudden departure of CFO Molloy. SAC, ¶265; *Waronker* ECF No. 1, ¶¶48-51; *Patel* ECF No. 1, ¶26; *Kraft* ECF No. 1, ¶26. The disclosures resulted in the largest ever single-day decline in the Company's stock price as

4827-1481-6176.v1

the Company's Class A share and Class C share prices plummeted approximately 28.7% and 27.8%, respectively, on unusually high trading volume.  SAC, ¶265.

Soon after, the DOJ and SEC launched non-public criminal and civil investigations into Under Armour's accounting and revenue recognition practices, examining whether the Company's unprecedented growth streak was fueled not by the "premium" Under Armour brand, but by improper accounting practices such as shifting sales from quarter to quarter to appear healthier.[3]  *See* 2017 Action ECF Nos. 106-4, 106-7.

On August 1, 2017, the Company's common stock prices fell precipitously when the Company reported another quarter of poor North American sales, lowered 2017 guidance, and announced a massive restructuring including hundreds of job cuts.  SAC, ¶266.  The Company's Class A common stock and Class C common stock prices dropped approximately 8.6% and 10.4%, respectively, on unusually high trading volume.  *Id.*

On November 3, 2019, the *WSJ* finally disclosed the existence and subject matter of the DOJ and SEC investigation to investors.  *Waronker* ECF No. 1, ¶¶62-65; *Patel* ECF No. 1, ¶¶37-39; *Kraft* ECF No. 1, ¶¶37-39.  That same day, the Company confirmed to the *WSJ* that it had been cooperating with the DOJ and SEC since July 2017.  *Id.*  On this news, the Company's Class A common stock and Class C common stock prices dropped 18.9% and 18.4%, respectively.  *Id.*

As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Aberdeen and other class members have suffered significant losses and damages.

---

[3]  By July 2017, the Company began cooperating with investigators but continued to conceal the existence of the ongoing DOJ and SEC investigations from investors and the Court for over two years.

4827-1481-6176.v1

## IV.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

Pursuant to Fed. R. Civ. P. 42(a), "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."  Importantly, the PSLRA contemplates consolidation if "more than one action on behalf of a class asserting substantially the same claim" has been filed.  15 U.S.C. §78u-4(a)(3)(B)(ii).  "Consolidation is often appropriate, regardless [of distinctions in class periods, parties, or damages among the suits], where the securities fraud actions 'are based on the same public statements and reports.'"  *Tchatchou v. India Globalization Capital, Inc.*, 2019 WL 1004591, at \*3 (D. Md. Feb. 28, 2019).  As detailed in Aberdeen's motion to consolidate briefing, consolidation of the Related Actions is appropriate because the cases involve common issues of law and fact.  *See* 2017 Action ECF Nos. 107, 125; *Patel* ECF Nos. 3,7.  Specifically, the Related Actions bring nearly identical claims under the Exchange Act and Rule 10b-5 as a result of the same fraud, perpetrated by the same core defendants, at the same company, in connection with the same securities during an overlapping time period.  *See id*.  The Related Actions are also based on many of the same "public statements and reports:"

| TABLE 1 | | |
|---|---|---|
| **Alleged False Statement/ Public Report** | **2019 Action Complaint** | *SAC* |
| August 3, 2016 Form 10-Q | *Patel/Kraft* ECF No. 1, ¶¶18-20; *Waronker* ECF No. 1, ¶38-40 | ¶¶201-202 |
| October 25, 2016 Form 8-K | *Patel/Kraft* ECF No. 1, ¶¶21-22; *Waronker* ECF No. 1, ¶42-43 | ¶207 |
| November 2, 2016 Form 10-Q | *Patel/Kraft* ECF No. 1, ¶¶23-25; *Waronker* ECF No. 1, ¶¶44-46 | ¶¶218-219 |
| "our ability to improve margins in Apparel is not only possible, but it's happening right now as we speak" | *Waronker* ECF No. 1, ¶25 | ¶148 |
| "we do see the ability to continue to drive ASPs and improve margin by – through premium products as the way that we'll build it out" | *Waronker* ECF No. 1, ¶25 | ¶150 |
| "[f]or the past 24 consecutive quarters or six years, we have driven net revenue growth above 20%" | *Waronker* ECF No. 1, ¶30 | ¶159 |
| "[a]nd again, we are to be clear, driving massive growth[, and] we are taking share" | *Waronker* ECF No. 1, ¶31; *see also* ¶32 | ¶162; *see also* ¶¶163-164 |
| Molloy responded that inventory was now "really healthy" and improved, and that despite excess inventory earlier in the year, the Company had not participated "too much" in promotions. | *Waronker* ECF No. 1, ¶41 | ¶204 |

Finally, Aberdeen has already indicated that it intends to incorporate the new evidence exposed by the *WSJ* into a consolidated complaint which will set forth the strongest and most inclusive securities fraud case practicable related to Under Armour's scheme to sustain its growth streak at all costs in the shadow of weakening demand. *See* 2017 Action ECF Nos. 106-107, 127; *Patel* ECF No. 7 at 2.[4]  Accordingly, any differences in the class periods or the framing of the allegations against the defendants based upon the *WSJ* evidence will be reconciled with the filing of

---

[4]    *See In re Synergy Pharm. Inc. Sec. Litig.*, 2019 WL 6150713, at *5 (E.D.N.Y. Nov. 20, 2019) ("Lead Plaintiffs (and Lead Counsel) have every incentive to pursue all of their losses – including the losses suffered in the later period of the proposed [*Patel*, *Kraft,* and *Waronker*] class periods if those claims are likely to be meritorious.").

4827-1481-6176.v1

a consolidated complaint.  *See Patel* ECF No. 7 at 5 n.8 (collecting cases); 2017 Action ECF No. 3 (consolidating the *Breece*, *Hopkins*, and *Stenger* Actions even though Mr. Stenger's complaint alleged a class period start date of July 24, 2014 - nearly two years prior to the start date of the *Breece* and *Hopkins* class periods).[5]

Consolidation of the Related Actions is therefore appropriate.

### B.    Aberdeen Should Be Appointed Lead Plaintiff With Respect to the 2019 Actions

After consolidation, the PSLRA establishes the procedure for the appointment of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of the following: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the Court to be appointed as lead plaintiff within 60 days of the publication of the notice.  15 U.S.C. §78u-4(a)(3)(A)(i).  Here, the notice in the *Patel* Action was published in *Business Wire* on November 6, 2019.  *See* Declaration of Robert R. Henssler Jr. in Support of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel, Ex. A.  Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the

---

[5]    For purposes of this motion, and a determination of the "largest financial interest in the relief sought by the class," Aberdeen uses the *Waronker* class period, the most inclusive of the four Related Actions.  *See, e.g.*, *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006) (finding that "the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members").

proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this act is the person or group of persons that –

> (aa)    has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### 1.    This Motion Is Timely

The November 6, 2019 statutory notice published in the *Patel* Action advised putative class members of the pendency of the *Patel* Action, the claims asserted, the relevant time period, and the right to move the Court for appointment as lead plaintiff by January 6, 2020.  *See* Henssler Decl., Ex. A.; 15 U.S.C. §78u-4(a)(3)(A).[6]  Because this motion is being timely filed by the statutory deadline, Aberdeen is eligible for appointment as lead plaintiff.

---

[6]    Aberdeen continues to maintain that Mr. Patel's notice (and the resulting January 6, 2020 deadline) are improper in that they are an attempt by Mr. Patel to evade consolidation and usurp Aberdeen's authority as Lead Plaintiff.  *See* 2017 Action ECF Nos. 107, 125; *Patel* ECF Nos. 3,7.

- 12 -

### 2. Aberdeen Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification, Aberdeen purchased 815,727 Under Armour Class A and Class C shares during the *Waronker* class period and suffered over $9,224,095 in losses as a result of defendants' alleged misconduct. *See* Henssler Decl., Exs. B, C. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, Aberdeen meets the PSLRA's prerequisite of having the largest financial interest.

### 3. Aberdeen Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "The Rule 23 inquiry under the PSLRA 'focuses solely on whether the person will be an appropriate class representative, and not whether the class may ultimately be certified.'" *Lefkoe v. Jos. A. Bank Clothiers*, 2006 WL 8441739, at *2 (D. Md. Nov. 20, 2006). "Thus, for the appointment of the lead plaintiff, 'only a preliminary holding that the typicality and adequacy requirements are satisfied is necessary[.]'" *Id.*

"'A person's claim is "typical" "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."'" *Id.* at *3. Here, Aberdeen satisfies the typicality requirement for purposes of selecting a lead plaintiff because, like other class members, it: (i) purchased Under Armour securities during the *Waronker* class period; (ii) was adversely affected by defendants' false and misleading statements; and (iii) suffered damages when the truth became known. Thus, Aberdeen's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

- 13 -

4827-1481-6176.v1

"The adequacy inquiry under Rule 23 requires the Court to determine 'whether the movant has "the ability to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class."'" *Id*. Here, Aberdeen is the most adequate lead plaintiff because its interest in aggressively pursuing the claims against defendants has been demonstrated to this Court first-hand through the vigorous prosecution of the 2017 Action to date. Its interests are clearly aligned with the interests of the members of the class who were similarly harmed as a result of defendants' false and misleading statements and omissions. Not only is there no antagonism between Aberdeen's interests and those of the other members of the class, there is also nothing to indicate that Aberdeen will not continue its vigorous prosecution of the Related Actions. Accordingly, Aberdeen is uniquely well-suited to serve as lead plaintiff.

Aberdeen is responsible for the administration of the Local Government Pension Scheme ("LGPS"), and does this through the North East Scotland Pension Funds ("NESPF"). Valued at over £4.4billion, the NESPF has around nearly 26,000 active members, more than 20,000 deferred members, and pays benefits to over 21,000 pensioners and dependents each month. Aberdeen is a sophisticated institutional investor that is familiar with the requirements and responsibilities of being a lead plaintiff in a securities class action and has demonstrated its willingness and ability to undertake those responsibilities on behalf of the putative class in this case. Aberdeen is thus precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members.").

- 14 -

4827-1481-6176.v1

All of these factors sufficiently evidence Aberdeen's satisfaction of Rule 23's requirements and capacity and willingness to serve as lead plaintiff. Additionally, as explained below, Aberdeen has selected experienced and qualified counsel, further evidencing its ability to fairly and competently represent the interests of the putative class.

### C.    The Court Should Approve Aberdeen's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See In re Cohen*, 586 F.3d 703, 711-12 (9th Cir. 2009); *In re Cavanaugh*, 306 F.3d 726, 732-35 (9th Cir. 2002). Aberdeen has selected Robbins Geller and Silverman Thompson to continue serving as lead counsel and local counsel, respectively.

Robbins Geller possesses the experience and resources necessary to prosecute this large and complex action for the benefit of the class. Robbins Geller, a 200-attorney firm with offices nationwide, regularly represents clients in complex class action litigation. The Firm's securities department includes numerous trial attorneys and former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues.[7] District courts throughout the nation have noted Robbins Geller's reputation for excellence, resulting in the appointment of Robbins Geller to lead roles in hundreds of complex class action cases. *See* 2017 Action ECF No. 13 (this Court appointing Robbins Geller as lead counsel and Silverman Thompson as local counsel); *Lefkoe*, 2006 WL 8441739, at *3 (appointing Robbins Geller as lead counsel and finding that "[t]t is undisputed that [Robbins Geller is] competent and experienced in

---

[7]    For a detailed description of Robbins Geller's track record, resources, and attorneys, please *see* https://www.rgrdlaw.com/. A hard copy of the Firm's resume is available upon the Court's request, if preferred.

- 15 -

class action securities litigation and [has] the resources to serve effectively as counsel"); *see also Jones v. Pfizer, Inc.*, No. 1:10-cv-03864-AKH, ECF No. 502 at 42-43 (S.D.N.Y. Aug. 10, 2015) (commending Robbins Geller for its work in achieving $400 million settlement on the eve of trial: "Without the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems.  So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . .  You did a really good job.  Congratulations."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"). Additionally, Robbins Geller has obtained the largest securities PSLRA class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.[8]

Silverman Thompson has a long track record of success in this District and around the country and is well aware of the Court's rules and procedures.

Thus, the Court can be assured that with Aberdeen's choice of Robbins Geller as lead counsel and Silverman Thompson as local counsel, the putative class will continue to receive the highest caliber of representation.

---

[8]  *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

- 16 -

- 17 -

## V.    CONCLUSION

The Related Actions are substantially similar and should be consolidated.  In addition, Aberdeen has satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  As such, Aberdeen respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of counsel for the class.

DATED:  January 6, 2020

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
ROBERT R. HENSSLER JR.
CHRISTOPHER R. KINNON


s/ ROBERT R. HENSSLER JR.
ROBERT R. HENSSLER JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
bhenssler@rgrdlaw.com
ckinnon@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
JACK REISE
MARK J. DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
jreise@rgrdlaw.com
mdearman@rgrdlaw.com

*Lead Counsel for Plaintiff*

- 18 -

4827-1481-6176.v1

SILVERMAN THOMPSON SLUTKIN
 & WHITE LLC
Andrew C. White, Federal Bar No. 0821
awhite@mdattorney.com
William Sinclair, Federal Bar No. 28833
bsinclair@mdattorney.com
201 N. Charles Street, 26th Floor
Baltimore, MD  21201
Telephone:  410/385-2225
410/547-2432 (fax)

*Local Counsel*

- 19 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 6, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ ROBERT R. HENSSLER JR.
ROBERT R. HENSSLER JR.

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bhenssler@rgrdlaw.com

4827-1481-6176.v1

# Mailing Information for a Case 1:17-cv-00388-RDB In re Under Armour Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Abelson**
  aabelson@zuckerman.com,dvermilye@zuckerman.com,creilly@zuckerman.com,cvandergriff@zuckerman.com

- **Stephen R Astley**
  sastley@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Austin P Brane**
  abrane@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Amanda F Davidoff**
  davidoffa@sullcrom.com,amanda-davidoff-7764@ecf.pacerpro.com

- **Mark J. Dearman**
  mdearman@rgrdlaw.com,9825585420@filings.docketbird.com,tseymore@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Eric Robert Delinsky**
  edelinsky@zuckerman.com

- **Adam Heider Farra**
  FarraA@gilbertlegal.com,efilings@cohenmilstein.com

- **Samuel P Groner**
  samuel.groner@friedfrank.com,ManagingAttorneysDepartment@friedfrank.com

- **Scott R Haiber**
  scott.haiber@hoganlovells.com,james.tansey@hoganlovells.com

- **Robert R Henssler , Jr**
  bhenssler@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher R Kinnon**
  ckinnon@rgrdlaw.com

- **Thomas Joseph Minton**
  tminton@charmcitylegal.com

- **Maureen E Mueller**
  mmueller@rgrdlaw.com

- **Pierce Christopher Murphy**
  pmurphy@mdattorney.com,dlawal@mdattorney.com,e_file@mdattorney.com,dfarmer@mdattorney.com

- **Kirtan Patel**
  nikoletta.mendrinos@murphyfalcon.com

- **Charles J Piven**
  piven@browerpiven.com

- **Nicholas Ian Porritt**
  nporritt@zlk.com

- **Jack Reise**
  jreise@rgrdlaw.com,e_file_fl@rgrdlaw.com,mmueller@rgrdlaw.com

- **Juan Carlos Sanchez**
  JSanchez@rgrdlaw.com

- **Elizabeth A Shonson**
  eshonson@rgrdlaw.com

- **William Nelson Sinclair**
  bsinclair@mdattorney.com,rscaffidi@mdattorney.com,dlawal@mdattorney.com,e_file@mdattorney.com

- **Daniel Stephen Sommers**
  dsommers@cohenmilstein.com,efilings@cohenmilstein.com

- **Michael P Sternheim**
  michael.sternheim@friedfrank.com

- **Jon Myer Talotta**
  jon.talotta@hoganlovells.com,albert.hagovsky@hoganlovells.com

- **James Tansey**
  james.tansey@hoganlovells.com

- **Steven J Toll**
  stoll@cohenmilstein.com,efilings@cohenmilstein.com

- **Yelena Trepetin**
  trepetin@browerpiven.com

- **James D Wareham**
  James.Wareham@friedfrank.com,ManagingAttorneysDepartment@friedfrank.com

- **G Stewart Webb , Jr**
  gswebb@venable.com,dmvermette@venable.com

- **Andrew C White**
  awhite@mdattorney.com,rscaffidi@mdattorney.com

- **Michael Jackman Wilson**
  MJWilson@Venable.com,BBLaFavors@Venable.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

# Mailing Information for a Case 1:19-cv-03209-RDB Patel v. Under Armour, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Robert R Henssler , Jr**
  bhenssler@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Nikoletta Sara Mendrinos**
  nikoletta.mendrinos@murphyfalcon.com,erica.finn@murphyfalcon.com,erin.sofinowski@murphyfalcon.com,karyn.slavin@murphyfalcon.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)