UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| In re UNDER ARMOUR SECURITIES LITIGATION | Case No.: 1:17-cv-00388-RDB<br><br>CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | |
| KIRTAN PATEL, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>UNDER ARMOUR, INC., KEVIN A. PLANK, PATRIK FRISK, DAVID E. BERGMAN, and LAWRENCE "CHIP" MOLLOY,<br><br>      Defendants. | Case No.: 1:19-cv-03209-RDB<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO CONSOLIDATE AND VACATE NOTICE AND LEAD PLAINTIFF DEADLINE**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ..........................................................................1

II.  STATEMENT OF FACTS.............................................................................3

III. ARGUMENT.....................................................................................5

   A.  The Court Maintains Broad Discretion to Deny Consolidation Even if Some Commonalities in Law or Fact Exist...............................................................5

   B.  The Actions Are Factually Distinct................................................................7

   C.  Consolidation Would Prejudice the Putative Class Members of the *Patel* Action and Violate the PSLRA ........................................................10

IV.  CONCLUSION.................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*,
   559 F.2d 928 (4th Cir. 1977).................................................................................. 5

*Arnold v. E. Air Lines, Inc.*,
   712 F.2d 899 (4th Cir. 1983).................................................................................. 7

*Campbell v. Bos. Sci. Corp.*,
   882 F.3d 70 (4th Cir. 2018).................................................................................... 7

*Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*,
   No. 3:10-CV-54, 2010 WL 5314543 (W.D. Va. Dec. 20, 2010)................................ 6

*Dube v. Signet Jewelers Ltd.*,
   No. 16-CV-6728 (JMF), 2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017)..................... 13

*Ekchian v. Home Depot, Inc.*,
   No. CIV.A. 95-1273-A, 1997 WL 34683666 (E.D. Va. July 9, 1997) ....................... 6

*Engler v. Harris Corp.*,
   No. CIV.A. GLR-11-3597, 2012 WL 5193818 (D. Md. Oct. 18, 2012) ..................... 5

*Greenberg v. Bear Stearns & Co.*,
   80 F. Supp. 2d 65 (E.D.N.Y. 2000)........................................................................ 12

*Hicks v. Grove*,
   No. CIV.A. ELH-12-1422, 2014 WL 768685 (D. Md. Feb. 25, 2014) .............. 5, 10

*Hom v. Vale, S.A.*,
   No. 1:15-CV-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ................. 12

*Horowitz v. SunEdison, Inc.*,
   No. 4:15 CV 1769 RWS, 2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) ............... 12

*In re Bank of Am. Corp. Sec., Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*,
   No. 09 MDL 2058 (DC), 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)................. 10

*In re CenturyLink Sales Practices & Sec. Litig.*,
   No. MDL172795MJDKMM, 2018 WL 1902725 (D. Minn. Apr. 20, 2018) ............ 9, 13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   No. 12-CV-4081, 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ........................... 10

*In re Houston Am. Energy Corp. Sec. Litig.*,
   970 F. Supp. 2d 613 (S.D. Tex. 2013) ................................................................. 12

*In re Leapfrog Enterprises, Inc. Sec. Litig.*,
No. C 03 05421 RMW, 2005 WL 5327775 (N.D. Cal. July 5, 2005) ..................................... 11

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
219 F.R.D. 343 (D. Md. 2003) ...................................................................................... 9

*In re Select Comfort Corp. Sec. Litig.*,
No. Civ.99 884 DSD/JMM, 2000 WL 35529101 (D. Minn. Jan. 27, 2000)........................... 11

*In re Thornburg Mortg., Inc. Sec. Litig.*,
629 F. Supp. 2d 1233 (D.N.M. 2009) ................................................................................ 12

*In re Under Armour Sec. Litig.*,
342 F. Supp. 3d 658 (D. Md. 2018) ............................................................................. 3, 4

*Joe Hand Promotions, Inc. v. Dock St. Enterprises, Inc.*,
No. CIV.A. WMN-11-1973, 2011 WL 6141058 (D. Md. Dec. 8, 2011)................................... 5

*Kipling v. Flex Ltd.*,
No. 18-CV-02706-LHK, 2019 WL 1472358 (N.D. Cal. Apr. 3, 2019)................................... 12

*Minter v. Wells Fargo Bank, N.A.*,
No. CIV.A. WMN-07-3442, 2012 WL 1963347 (D. Md. May 30, 2012)................................ 6

*Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
No. 4:17-CV-00449, 2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) ..................................... 12

*Rule v. Best Indus., Inc.*,
121 F.3d 700 (4th Cir. 1997)....................................................................................... 5

*Sudunagunta v. NantKwest, Inc.*,
No. CV 16-01947-MWF-JEM, 2017 WL 8811608 (C.D. Cal. Feb. 6, 2017) ........................ 12

*Synovus Bank v. Coleman*,
No. 1:11CV66, 2012 WL 178361 (W.D.N.C. Jan. 23, 2012)................................................... 6

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
No. CV 11-9495 PSG JCGX, 2013 WL 2247394 (C.D. Cal. May 9, 2013) ........................ 13

*Waldman v. Wachovia Corp.*,
No. 08 CIV. 2913(SAS), 2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009) ............................... 11

*Walter E. Heller & Co. v. Tuscarora Cotton Mill*,
1974 WL 168879 (M.D.N.C. Mar. 29, 1974) (denying motion................................................. 6

**Statutes**

15 U.S.C. § 78u-4(a)(3) ....................................................................................... 10

15 U.S.C.A. § 78u-4(a)(3)(A) ................................................................................................ 11

15 U.S.C.A. § 78u-4(a)(3)(A)(i) ........................................................................................... 10

15 U.S.C.A. § 78u-4(a)(3)(A)(i)(II) ...................................................................................... 10

15 U.S.C.A. § 78u-4(a)(3)(B)(i) ............................................................................................ 11

**Rules**

Fed R. Civ. P. 42(a) ................................................................................................................. 5

Fed. R. Civ. P. 42 .................................................................................................................... 5

Fed. R. Civ. P. 60(b) ............................................................................................................... 4

Plaintiff Kirtan Patel respectfully submits this Memorandum of Law in opposition to the motion filed by Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("Movant") to consolidate *In re Under Armour Sec. Litig.*, No. 1:17-cv-388-RDB ("2017 Action") with *Patel v. Under Armour, Inc.*, No. 1:19-cv-3209-RDB ("*Patel* Action") and to vacate the notice and lead plaintiff deadline issued in the *Patel* Action.

## I.    PRELIMINARY STATEMENT

This Court should not consolidate the 2017 Action with the *Patel* Action for two reasons. First, the conduct and class period alleged in each case are distinct. Second, consolidation will prejudice the putative class members in the *Patel* Action. Accordingly, as consolidation of these two cases would not be proper here, the press release issued by Patel's counsel to investors and potential lead plaintiffs was entirely proper and should not be vacated.

The factual distinctions between the *Patel* Action and the 2017 Action are significant and demonstrate why consolidation is not appropriate. The 2017 Action centers on the allegations that Defendants Under Armour, Inc. ("Under Armour," or the "Company") and Kevin A. Plank violated the Exchange Act by misleading the investing public about the strength of Under Armour's core business while concealing the Company's sharply declining demand and market share. As aptly summarized by this Court in its Order dated August 19, 2019:

> In a nutshell, Plaintiffs' allegations paint a picture that Plank, although he had access to contradictory information, recklessly told investors that Under Armour's core business was incredibly strong, profitable, and gaining market share, while the Company was shifting from a premium brand focus to competing on price, which Plank knew would result in a decline in the Company's market share and stock price.

2017 Action, Dkt. No. 98 at 20.

In its Second Amended Complaint, Movant alleged that this misconduct occurred between September 16, 2015 and January 30, 2017. 2017 Action, Dkt. No. 78 (Second Amended

1

Complaint) ¶ 2. In order to prevail, Movant must prove that the Defendants misrepresented those facts between September 16, 2015 and January 30, 2017 and that the Defendants knew the truth about the Company's declining "brand heat," declining demand, and shift in pricing strategy, which belied the Company's positive statements about the Company's prospects for growth and market share.

These same facts are not at issue in the *Patel* Action. Patel does not need to prove a single fact regarding the Company's knowledge of declining demand or shift in pricing philosophy. Rather, the *Patel* Action turns on the distinct allegations that from August 3, 2016 through November 1, 2019, the Company misled investors by failing to disclose that the Company had material weaknesses in its internal control over financial reporting. *See Patel* Action, Dkt. No. 1 (Complaint) ¶¶ 18-36. The reciprocal holds true as well, as the 2017 Action does not involve the adverse facts or alleged misrepresentations underlying the *Patel* Action's allegations. The central issues in the *Patel* Action are factually distinct from those in the 2017 Action, and therefore this Court should deny the motion to consolidate.

These factual distinctions also demonstrate why Movant has no interest in prosecuting the *Patel* Action's claims, for there is no overlap with the factual allegations in the 2017 Action in which Movant was appointed Lead Plaintiff. Movant has therefore not provided the proper notice to the putative class members of the *Patel* Action. Consolidating the *Patel* Action with the 2017 Action would frustrate the purposes of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and would prejudice the putative class members of the *Patel* Action by depriving them of representation by the "most adequate plaintiff."

Finally, because there are insufficient commonalities to support consolidating the *Patel* Action with the 2017 Action, the press release published by Patel's counsel was proper and timely.

As consolidation would not be justified here, the facts that the lead plaintiff deadline has already passed in the 2017 Action and Movant has served as Lead Plaintiff in the 2017 Action is irrelevant to the press release issued by Patel's counsel, and to any otherwise proper lead plaintiff motions in the *Patel* Action.

## II.    STATEMENT OF FACTS

This Court dismissed the 2017 Action with prejudice on August 19, 2019. 2017 Action, Dkt. No. 98 ("Dismissal Order"). In the Dismissal Order, the Court noted that the actionable misrepresentations or omissions were detailed in its 2018 Order dismissing the 2017 Action without prejudice. *Id.* at 15 (citing *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 685, 689 (D. Md. 2018) ("2018 Order")). In the Court's 2018 Order, it described the litany of alleged false and misleading statements and omissions, some of which the Court deemed adequately pleaded, such as:

- The statement "our ability to improve margins in Apparel is not only possible, but it's happening right now as we speak," and various statements regarding inventory, such as "retail is pretty good and inventories are clean"

- Defendants failed to explain departures of key personnel, and failed to relay facts about lower ASPs, loss in market share, excess inventory, and impact of wholesale customers' bankruptcies.

- Statements made regarding the Company's 2016 financial outlook

*See id.,* 342 F. Supp. 3d at 685-689. The Court did not delineate exactly which statements were adequately pleaded because it ultimately found, in each dismissal order, that Movant had failed to adequately plead scienter as to any of the statements or omissions.

Movant alleged that the market learned the truth about Under Armour's financial prospects through a series of partial disclosures beginning in 2016 and continuing through January 30, 2017, revealing a dramatic slowdown in growth, declining market share, tighter margins, excess inventory, and executive resignations, which caused the Company's stock price to fall. *See*

3

2017 Action, Dkt. No. 78 ¶¶ 133-235. The Class Period alleged in the 2017 Action was September 16, 2015 through January 30, 2017. *Id.* ¶ 2.

Movant has appealed this Court's Dismissal Order to the Fourth Circuit. 2017 Action, Dkt. No. 104 (Notice of Appeal). Concurrently with the instant motion, Movant has also moved the Court for an order to reopen the case and to permit further amendment, pursuant to Fed. R. Civ. P. 60(b). 2017 Action, Dkt. No. 106.

The initial complaint in the *Patel* Action was filed on November 6, 2019. *Patel* Action, Dkt. No. 1. The false statements at issue in the *Patel* Action center on Defendants' false and misleading statements that the Company's internal control over financial reporting were effective, or that the Company did not have a material weakness in its internal controls. *Id.* ¶¶ 20, 25, 29, 32. The corrective disclosure alleged in the *Patel* Action was the release of a *Wall Street Journal* article on November 4, 2019, reporting that the U.S. Department of Justice and the Securities Exchange Commission are investigating the Company's accounting practices and related disclosures, which caused Under Armour's stock to fall over 18% that same day. *Id.* ¶¶ 37-39. The Class Period alleged in the *Patel* Action is August 3, 2016 through November 1, 2019. *Id.* ¶ 1.

Upon filing the initial complaint in the *Patel* Action, Patel's counsel timely published a notice of the lawsuit to Under Armour investors pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See Patel* Action, Dkt. No. 3-5 (also attached to Movant's brief as Exhibit 3). The notice provided the statutory deadline to seek appointment as Lead Plaintiff in the *Patel* Action. *Id.* Nearly two weeks after the *Patel* Action was filed, Movant brought the instant motion to consolidate the *Patel* Action with the 2017 Action, and moved to reopen the 2017 Action for further amendment.

4

III.   ARGUMENT

A.     **The Court Maintains Broad Discretion to Deny Consolidation Even if Some Commonalities in Law or Fact Exist**

Consolidation is proper when the cases involve common questions of law and fact and the Court finds that it would avoid unnecessary costs or delay. *See* Fed. R. Civ. P. 42. However, "the district court possesses broad discretion as to whether to order consolidation under Rule 42(a)." *Rule v. Best Indus., Inc.*, 121 F.3d 700, 8 (4th Cir. 1997) (citing *A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 933 (4th Cir. 1977)); *Hicks v. Grove*, No. CIV.A. ELH-12-1422, 2014 WL 768685, at *1 (D. Md. Feb. 25, 2014) (denying motion to consolidate despite overlapping time periods, parties, and facts). In exercising its discretion under Rule 42, the Court "should weigh the interests of judicial convenience in consolidating the cases against the delay, confusion, and prejudice consolidation might cause to the parties." *Joe Hand Promotions, Inc. v. Dock St. Enterprises, Inc.*, No. CIV.A. WMN-11-1973, 2011 WL 6141058, at *2 (D. Md. Dec. 8, 2011).[1] "The moving party bears the burden of showing that consolidation is preferable to separate trials." *Hicks*, 2014 WL768685, at *1 (citing *Joe Hand*, 2011 WL 6141058, at *2); *Engler v. Harris Corp.*, No. CIV.A. GLR-11-3597, 2012 WL 5193818, at *6 (D. Md. Oct. 18, 2012) (granting motion to sever where "it is unclear whether a single consolidated trial would take less courtroom time than separate trials, especially given that Plaintiffs' claims all stem from different sets of facts.").

A finding of some common questions of law or fact is not the end of the inquiry. Indeed, numerous courts within the Fourth Circuit have denied consolidation motions despite the existence of common facts. *See, e.g., Hicks*, 2014 WL768685, at *2 (denying consolidation where

---

[1] Emphasis is added and internal quotations and citations are omitted unless otherwise noted.

factual similarities "are superficial at best"); *Synovus Bank v. Coleman*, No. 1:11CV66, 2012 WL

178361, at *1 (W.D.N.C. Jan. 23, 2012) (denying motion to consolidate despite finding "some

common questions of law and fact" because the Plaintiffs' claims "are all separate and distinct");

*Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, No. 3:10-CV-54, 2010 WL 5314543, at *6

(W.D. Va. Dec. 20, 2010) ("Although the cases involve common questions of fact, I see no

compelling reason for formal consolidation"); *Ekchian v. Home Depot, Inc.*, No. CIV.A. 95-1273-

A, 1997 WL 34683666, at *2 (E.D. Va. July 9, 1997) (denying motion to consolidate despite

finding some common issues of law and fact); *Walter E. Heller & Co. v. Tuscarora Cotton Mill*,

1974 WL 168879, at *1 (M.D.N.C. Mar. 29, 1974) (denying motion to consolidate where cases

involved some common facts and parties but three separate transactions).

In *Minter v. Wells Fargo Bank, N.A.*, No. CIV.A. WMN-07-3442, 2012 WL 1963347, at

*1 (D. Md. May 30, 2012) (denying motion to consolidate), the court elaborated on the difficulties

of consolidating two highly complex class actions "premised on similar but distinct theories of

liability":

> Though it may be more economical and certainly less time consuming to try these cases together, the complexity of these class actions militates against such an outcome. The jury will hear voluminous evidence related to the intricacies of the banking and lending industry and the inner-workings of Prosperity. They will be instructed on the different legal theories of the case and the tolling analysis that they must complete. They will then be left to deliberate. The complexity and unfamiliarity of the subject matter to most jurors will likely make this task difficult; even if the factual evidence is strongly in favor of one side or the other, unraveling the different legal theories will take some time and effort. Because the cases are premised on similar but distinct theories of liability, the task of deliberating would become significantly more complicated if the cases were tried together. The jury would be charged with compartmentalizing certain evidence that applies to one case but not the other and attempting to keep straight the differences between liability under RESPA, RICO and the FFA, not to mention the task of determining tolling for two different periods of time. It is certainly foreseeable that the complexity of this task could cause the jury to overlook or confuse certain nuances in the law or facts and lead to an unjustly rendered verdict. While the Court does not savor the

6

> idea of sitting through much of the same evidence twice, it is the Court's job to do so in order to ensure fairness for all parties before the tribunal.

The same reasoning applies here where the Court is faced with two complex securities fraud class actions involving factually distinct theories of liability centered on two largely separate time periods.

Furthermore, consolidation is improper if it would prejudice the rights of the parties. *See Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 74 (4th Cir. 2018); *Arnold v. E. Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1983) ("Consolidation, or refusal to sever, where prejudice results under the facts and circumstances of the particular case, amounts to abuse of discretion, constituting reversible error"). Here, consolidation would severely prejudice the rights of the putative class members of the *Patel* Action.

### B.     The Actions Are Factually Distinct

The most critical distinction is that the central facts alleged in the 2017 Action – the defendants' knowledge of the Company's declining demand and market share – are not at issue in the *Patel* Action. *Compare* 2017 Action, Dkt. No. 78 ¶¶ 114-132, with *Patel* Action, Dkt. No. 1 ¶¶ 18-38. Likewise, the central facts alleged in the *Patel* Action – improper accounting practices and material weaknesses in Under Armour's internal controls – were not at issue in the 2017 Action. *Id.* The alleged misrepresentations to investors in the *Patel* Action – undisclosed material weaknesses in the Company's internal controls over financial reporting – are likewise distinct both in time and in substance from those at issue in the 2017 Action. *Compare Patel* Action, Dkt. No. 1 ¶¶ 18-35, with 2017 Action, Dkt. No. 78 ¶¶ 114-132.

Movant argues that both the *Patel* Action and the 2017 Action allege false and misleading statements occurring on some of the same days, Mov. Br.[2] at 5, but Movant ignores the crucial distinctions that (A) the *Patel* Action alleges false and misleading statements continuing years past the last alleged misrepresentations in the 2017 Action, *Patel* Action, Dkt. No. 1 ¶¶ 27-35; and (B) to the extent the dates overlap, the false or misleading statements which Patel and Movant respectively allege are entirely different in both form and substance. *Compare Patel* Action, Dkt. No. 1 ¶¶ 18-26, with 2017 Action, Dkt. No. 78 ¶¶ 201, 218.

Furthermore, the class period in the *Patel* Action extends well beyond the class period contemplated in the 2017 Action, precisely because the alleged conduct and misrepresentations central to the respective complaints were wholly distinct. *See Patel* Action Dkt. No. 1 ¶ 1 (class period defined as "August 3, 2016 through November 1, 2019, both dates inclusive"); 2017 Action, Dkt. No. 78 ¶ 2 (class period defined as "between September 16, 2015 and January 30, 2017, inclusive"). In light of the significant factual differences between the misconduct alleged in the *Patel* Action as compared to the 2017 Action, consolidation of the two actions would not be proper.

Contrary to Movant's assertion that, like the *Patel* Action, the conduct and misrepresentations alleged in the 2017 Action "also included allegations about Under Armour's accounting practices," Mov. Br. at 3 (citing 2017 Action, Dkt. No. 78 ¶¶ 41, 77-78, 111), the allegations in the 2017 Action have nothing to do with the false and misleading statements identified in the *Patel* Action. The paragraphs to which Movant cites contain, at best, a glancing mention of unrelated facts concerning the accounting of excess returns from two of Under

---

[2] References to "Mov. Br." are to Movant's Memorandum of Law in support of Movant's motion to consolidate. Dkt. No. 3-2.

Armour's prominent customers, and the then-impending bankruptcy of Sports Authority. Notably, Movant does not, and cannot, attempt to identify anywhere in their Second Amended Complaint involving allegations of material weaknesses in internal control over financial reporting, the central allegation in the *Patel* Action.

Movant also claims that the corrective disclosure identified in the *Patel* Action, which inarguably is not found anywhere in the 2017 Action, nevertheless "encompass[es]" the statements at issue in the 2017 Action, and forecloses the possibility that the post-2017 statements identified in the *Patel* Action, and not in the 2017 Action, are at issue. Mov. Br. at 6. Yet nowhere do either of the *Wall Street Journal* articles cited by Movant actually say that the DOJ and SEC investigations include exclusively the Company's pre-July 2017 statements, or exclude its post-2017 statements. Mov. Br. Exs. 1-2. There is no reason to infer that ongoing criminal and civil investigations spanning nearly two years, which the Company did not voluntarily disclose, concern exclusively misconduct predating the beginning of the investigations.

The cases cited by Movant regarding factual commonalities are inapposite, as they involved motions to consolidate multiple actions alleging the exact same misrepresentations in the same time periods, based on the same adverse facts. *See In re CenturyLink Sales Practices & Sec. Litig.*, No. MDL172795MJDKMM, 2018 WL 1902725, at *4 (D. Minn. Apr. 20, 2018) (consolidating case that "asserts the same legal theories against the same defendants for the same class period based on the same fraud"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003) (consolidating cases where "none of the responding parties objected" and "all plaintiffs base their losses on the same overstatements and inflation of profits alleged to have

9

been made by [Defendant]").[3] Conversely, here, the adverse facts and alleged misrepresentations in the *Patel* Action are not shared by the 2017 Action, and of course Patel is indeed opposing this consolidation motion.

In light of the factual distinctions between the two cases, Movant fails to carry its burden of showing that that consolidation would further the interests of justice and judicial efficiency. *Hicks*, 2014 WL 768685, at *2 ("consolidation is not likely to reduce discovery, as different sets of facts are at issue, and any time saved through consolidation may be outweighed by the unwieldiness of a single action encompassing distinct facts, evidence, and theories of liability").

C.      **Consolidation Would Prejudice the Putative Class Members of the *Patel* Action and Violate the PSLRA**

Consolidation would prejudice putative class members of the *Patel* Action by depriving their right of having the most adequate plaintiff under the PSLRA. The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff and lead counsel to oversee class actions for violations of federal securities laws. *See* 15 U.S.C. § 78u-4(a)(3). It requires the plaintiff to publish a notice to the class informing class members of their right to seek appointment as lead plaintiff. 15 U.S.C.A. § 78u-4(a)(3)(A)(i). Any member of the purported plaintiff class then has 60 days from the date on which the notice is published to file a motion to be appointed lead plaintiff. 15 U.S.C.A. § 78u-4(a)(3)(A)(i)(II). The court must then appoint as lead plaintiff "the member or members of the purported class that the court determines to be most capable of

---

[3] *See also In re Bank of Am. Corp. Sec., Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) (consolidated cases "arise out of the same facts and circumstances … are substantially similar and, except perhaps with respect to damages, raise the same issues of fact and law"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, No. 12-CV-4081, 2013 WL 4399215, at *1 (S.D.N.Y. Aug. 13, 2013) (consolidated cases involved claims "arising out of the same series of events").

adequately representing the interests of class members" (the "most adequate plaintiff"). 15 U.S.C.A. § 78u-4(a)(3)(B)(i).

However, some cases require that such notice be provided more than once, to avoid prejudice to certain putative class members. As here, when a new action is filed asserting "entirely new factual and legal allegations … affecting a new class of plaintiffs," new notice may be required. *In re Select Comfort Corp. Sec. Litig.*, No. Civ.99 884 DSD/JMM, 2000 WL 35529101, at *7-8 (D. Minn. Jan. 27, 2000). Indeed, "new class members are entitled to notice regarding their claims and potential lead plaintiffs are entitled to a reasonable opportunity to identify themselves and present themselves for the Court's consideration." *Waldman v. Wachovia Corp.*, No. 08 CIV. 2913(SAS), 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009); *see also In re Leapfrog Enterprises, Inc. Sec. Litig.*, No. C 03 05421 RMW, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005) (requiring republication where the consolidated complaint included new allegations and expanded the class period by nine months).

Here, Movant does not state any claims on behalf of the putative class members in the *Patel* Action, as the alleged misrepresentations and underlying adverse facts in the *Patel* Action are factually distinct from the allegations in the 2017 Action. Therefore, consolidation would add claims by a whole new class of plaintiffs who were not included in the 2017 Action and allow Movant to proceed on these claims without providing proper notice to the putative class members of the *Patel* Action. This would undermine the letter and intent of the notice requirements set forth by 15 U.S.C.A. § 78u-4(a)(3)(A) and prejudice the putative class members of the *Patel* Action. Consequently, the notice published by Patel's counsel should remain unaffected by the prior lead plaintiff deadline and appointment process from the 2017 Action.

The claims in the *Patel* Action do not merely allege different class periods for the same claims, as was the case in Movant's cited authorities, *Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) ("*simply changing the class period* does not necessitate a new notice be sent out"); *Horowitz v. SunEdison, Inc.*, No. 4:15 CV 1769 RWS, 2016 WL 1161600, at *2 (E.D. Mo. Mar. 24, 2016) (republication of notice was not required where later-filed case asserted "substantially the same claim" but expanded the class period); *Hom v. Vale, S.A.*, No. 1:15-CV-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (same).[4] Rather, in addition to alleging a substantially different class period, which overlaps the 2017 Action class period for only six of the thirty-nine months of the *Patel* Action class period, the *Patel* Action alleges factually distinct claims which are not suitable for consolidation with the 2017 Action. Therefore, the press release issued by Patel's counsel and any lead plaintiff motions filed in connection therewith in the *Patel* Action are entirely proper and timely.

Movant itself cites a number of cases demonstrating why consolidation is inappropriate and republication of a lead plaintiff notice is required in cases like the *Patel* Action and the 2017 Action, where the later-filed complaint involves substantially different facts and allegations. Mov. Br. at 9-10 n.8. *Kipling v. Flex Ltd.*, No. 18-CV-02706-LHK, 2019 WL 1472358, at *1 (N.D. Cal.

---

[4] *See also In re Houston Am. Energy Corp. Sec. Litig.*, 970 F. Supp. 2d 613, 646 (S.D. Tex. 2013) ("cost of republication would outweigh any marginal gains from notifying class members of the extension of the Class Period"), *rev'd on other grounds*, 758 F.3d 676 (5th Cir. 2014); *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1241–42 (D.N.M. 2009) (republication not required where "[t]he new claims are closely related to the initial claims expressly covered in the notice"); *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000) (republication of notice not required when complaint was amended to add an additional defendant); *Sudunagunta v. NantKwest, Inc.*, No. CV 16-01947-MWF-JEM, 2017 WL 8811608, at *4 (C.D. Cal. Feb. 6, 2017) (republication of notice not required due to expanded class period in newly filed complaints).

Apr. 3, 2019) (requiring republication of notice "[b]ecause Bristol's amended complaint substantially alters the class's allegations against Flex"); *CenturyLink*, 2018 WL 1902725, at *5 (courts appoint separate lead plaintiffs when there are "vast differences between the classes the lead plaintiffs sought to represent"); *Dube v. Signet Jewelers Ltd.*, No. 16-CV-6728 (JMF), 2017 WL 1379385, at *2 (S.D.N.Y. Apr. 14, 2017) (new notice and reopening of lead plaintiff process is appropriate when subsequent complaints "dramatically alter[] the contours of the lawsuit"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495 PSG JCGX, 2013 WL 2247394, at *5 (C.D. Cal. May 9, 2013) pleadings added allegations based on "an entirely different factual scenario").

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Motion to consolidate the 2017 Action and *Patel* Action and to vacate the notice and lead plaintiff deadline in the *Patel* Action.

Dated: December 2, 2019

Respectfully submitted,

By: */s/ Nikoletta S. Mendrinos*
Nikoletta S. Mendrinos (18961)
**MURPHY, FALCON & MURPHY, P.A.**
One South Street, 30th Floor
Baltimore, MD 21202
Telephone: (410) 539-6500
Fax: (410) 539-6599
nikoletta.mendrinos@murphyfalcon.com
*Liaison Counsel for Plaintiff Kirtan Patel*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com
*Counsel for Plaintiff Kirtan Patel*
*(Pro hac vice forthcoming)*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Nikoletta S. Mendrinos*
Nikoletta S. Mendrinos