**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re UNDER ARMOUR SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Civil No. 1:17-cv-00388-RDB<br><br>CLASS ACTION |
| KIRTAN PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNDER ARMOUR, INC., KEVIN A. PLANK, PATRIK FRISK, DAVID E. BERGMAN and LAWRENCE "CHIP" MOLLOY,<br><br>Defendants. | Civil No. 1:19-cv-03209-RDB<br><br>CLASS ACTION |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO CONSOLIDATE AND VACATE NOTICE AND LEAD PLAINTIFF DEADLINE**

4812-0947-0126.v1

## I.    INTRODUCTION[1]

Presently before this Court are the above-captioned related securities fraud class actions concerning Under Armour's scheme to mask slowing demand between late 2015 and early 2017 and its unsuccessful attempt to prevent the Company's 20-plus quarter streak of at least 20% net revenue growth from coming to an end.[2]  The Court should consolidate the *Patel* Action into the *Under Armour* Consolidated Action (collectively, the "Related Actions") because, as a result of their shared core subject matter and identical §§10(b) and 20(a) claims brought under the Securities Exchange Act of 1934 (the "Exchange Act") against the same principal defendants during overlapping class periods, they share substantial "common questions of law and fact."  Not only do policies of judicial economy favor consolidation, but the failure to bring the Related Actions together would likely result in inconsistent rulings for those who, like Mr. Patel and Mr. Kraft, are class-members in both

---

[1]    On December 9, 2019, Under Armour, Inc. and Kevin Plank filed an opposition (*see Under Armour*, ECF No. 120) to the request in plaintiffs' motion (*Under Armour*, ECF No. 107; *Patel*, ECF No. 3 ("Motion")) to consolidate the *Patel v. Under Armour, Inc.*, No. 19-cv-032090-RDB (D. Md.) ("*Patel*" or "*Patel* Action") with *In re Under Armour Sec. Litig.*, No. 17-cv-00388-RDB (D. Md.) ("*Under Armour*" or "*Under Armour* Consolidated Action") based on the Court's lack of jurisdiction over *Under Armour* during the pendency of appellate proceedings.  However, because: (1) there is no dispute that the Court has jurisdiction over *Patel*; and (2) Mr. Patel's opposition to the balance of the relief sought by the Motion (vacating notice and the lead plaintiff deadline) is solely premised on the arguments he makes against consolidation, the arguments contained herein apply equally to: (a) why the notice published in *Patel*, and the corresponding lead plaintiff deadline should be vacated; and (b) why consolidation ***will be*** appropriate (if and when) Lead Plaintiff Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund's ("Aberdeen") Rule 60(b) Motion and accompanying Rule 62.1 Request are ruled upon and, if granted, the Fourth Circuit returns jurisdiction to this Court.  Aberdeen does not object to the Motion's request for consolidation being held in abeyance until such time.

[2]    On December 9, 2019, Phillip Kraft filed a "copy-cat" complaint that is essentially identical to Mr. Patel's complaint, even duplicating Mr. Patel's typos.  *See Kraft v. Under Armour, Inc.*, No. 19-cv-03502 (D. Md.) ECF No. 1 ("*Kraft*").  *Compare Kraft*, ECF No. 1, ¶22 *with Patel*, ECF No. 1, ¶22 (same).  *See also* n.6, *infra*.

cases, which allege that the same Under Armour regulatory reports contained false and misleading statements and omissions during the overlapping portions of the class periods.

Mr. Patel attempts to avoid consolidation by carefully curating a complaint that repackages the central theory of *Under Armour* through the lens of the facts reported by the *Wall Street Journal*. Mr. Patel's arguments against consolidation – all of which hinge on supposed factual differences between the allegations in the Related Actions and the overlapping but non-identical class periods – should be rejected because "[t]hese purported distinctions are at their core a product of the framing of the allegations rather than true differences in the underlying subject matter." *See In re Synergy Pharm. Inc. Sec. Litig.*, 2019 WL 6150713, at *4 (E.D.N.Y. Nov. 20, 2019).[3]  Moreover, Mr. Patel's opposition entirely fails to address the reality that in cases subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the lead plaintiff is charged with managing the litigation as a whole, precluding other plaintiffs from bringing additional class actions on behalf of supposedly more inclusive classes, including in instances like here, where new facts are alleged relating to the same case.  *See* Motion at 7-8.

While *Patel* argues that consolidation would prejudice class members, he turns a blind eye to Aberdeen's oft-repeated intent to incorporate the newly-discovered evidence exposed by the *Wall Street Journal* into a consolidated complaint which will set forth the strongest and most inclusive securities fraud case practicable related to Under Armour's scheme to sustain its growth streak at all costs in the shadow of weakening demand.

Mr. Patel's opposition to the balance of the relief sought by the Motion depends on the Court finding that the claims in the Related Actions "are not suitable for consolidation" (*Patel*, ECF No. 4

---

[3]   All citations and footnotes are omitted and emphasis is added unless otherwise noted.

at 12).  Because Aberdeen has demonstrated that consolidation of the Related Actions is appropriate, it requests that the Court also vacate the PSLRA notice and lead plaintiff deadline published in *Patel*.

## II.    ARGUMENT

Rule 42 of the Federal Rules of Civil Procedure allows the court in its discretion to consolidate actions when "common question[s] of law or fact" are involved.  Fed. R. Civ. P. 42. This Court has recognized that "[p]olicies of judicial economy generally favor the consolidation of related actions." *Quillen v. Guttman*, 2010 WL 1416122, at \*2 (D. Md. Apr. 5, 2010) (Bennett, J.). "Securities actions provide particularly compelling opportunities for consolidation when 'the complaints are based on the same "public statements and reports."'" *Zaltzman v. Manugistics Grp., Inc.*, 1998 U.S. Dist. LEXIS 22867, at \*5 (D. Md. Oct. 8, 1998).[4]

As detailed in the Motion, consolidation of the *Patel* Action into the *Under Armour* Consolidated Action is appropriate because the cases involve common issues of law and fact.  *See* Motion at 4-8.  Indeed, the Related Actions both allege violations of §§10(b) and 20(a) of the Exchange Act on behalf of purchasers of Under Armour securities stemming from false and misleading statements and omissions regarding the financial condition and business of Under Armour.[5]  The specific subject matter at the heart of the Related Actions is also the same:

---

[4]    *See also In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) (same); *French v. CBL & Assocs. Props., Inc.*, 2016 WL 7668501, \*1 (E.D. Tenn. 2016) ("Courts have found that consolidation is particularly appropriate in securities class action litigation."); *Carr v. Analogic Corp.*, 2018 WL 4932858, at \*1 (D. Mass. 2018) ("'Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved.'"); *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at \*3 (N.D. Cal. Nov. 8, 2019) (same).

[5]    *Compare Under Armour*, ECF No 78, ¶271 ("[T]his action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects.") *with Patel*, ECF No. 1, ¶36 ("[A]s a result, Defendants' statements about its [sic]

- 3 -

4812-0947-0126.v1

defendants' efforts to mask slowing demand and to prevent Under Armour's 20-plus quarter streak

of at least 20% net revenue growth from coming to an end in 2016.  The similarities do not end

there.  The principle defendants in the Related Actions (Under Armour and CEO Kevin Plank) are

the same.  The class periods in the Related Actions overlap by more than 180 days, during which the

*Under Armour* complaint alleges false statements in all three of the Company's SEC reports also

alleged as false in the *Patel* complaint (the August 3, 2016 Form 10-Q, October 25, 2016 Form 8-K,

and November 2, 2016 Form 10-Q).  *Compare Patel*, ECF No. 1, ¶¶18-25 *with Under Armour*, ECF

No. 78, ¶¶201-202, 207, 218.[6]  The only other false statements alleged in *Patel* are: the January 31,

2017 press release which forms a substantial basis of both the allegations in *Under Armour* as well

as the *Wall Street Journal* article, and four nearly-identical paragraphs from Under Armour's 2016-

2018 Form 10-Ks.  *See Patel*, ECF No. 1, ¶¶26-35; *Under Armour*, ECF No. 78, ¶¶221-232, 265.

Mr. Patel attempts to thwart consolidation by citing to his expanded class period and cherry-

picking specific allegations pled in his complaint that are absent from the complaint in *Under*

*Armour* and vice versa.  *See Patel*, ECF No. 4 at 7 (arguing that the "***most critical distinction***"

between the Related Actions is that "the defendants' knowledge of the Company's declining demand

---

business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.").

[6]    Further highlighting the similarities between the false and misleading statements alleged in the Related Actions, Mr. Patel appears to make several errors in the process of borrowing from Aberdeen's complaint when he refers to the October ***25***, 2016 press release as the "October 22, 2016 press release," while quoting from Aberdeen's prior allegations pertaining to false statements made by CEO Plank in 2015.  *Compare Under Armour*, ECF No. 30, ¶154 ("On October 22, 2015, the Company issued a press release announcing its financial results for 3Q15. In the press release, Plank boasted that: 'Our scoreboard in the third quarter not only marked our 22nd straight quarter of ***at least 20% net revenue growth***, but also our first $1 billion quarter.'") with *Patel*, ECF No. 1, ¶22 ("The October 22, 2016 press release also included Defendant Plank's specifically noting Under Armour's ongoing focus on its 20-plus quarter streak of '***at least 20% net revenue growth***.'"). The SEC report that Mr. Patel meant to cite (the October 25, 2016 press release) does not contain those words from CEO Plank.

4812-0947-0126.v1

and market share" is not at issue in *Patel* while "improper accounting practices and material weaknesses in Under Armour's internal controls," are not at issue in *Under Armour*).  Mr. Patel's argument ignores the well-settled principal that even entirely different claims (as well as significant differences between allegations in support of the same claims) are insufficient to preclude consolidation when there are substantial issues of law and fact that are common between cases.[7] Here, however, any supposed differences between the Related Actions – which bring the same claims under the Exchange Act in connection with the same fraud perpetrated by the same core defendants at the same company in connection with the same securities during an overlapping time period – are easily dwarfed by the questions of law and fact common to them.  *Compare e.g.*, *Patel*, ECF No. 1, ¶45 (listing questions of law and fact common to the *Patel* class) *with Under Armour*, ECF No. 78, ¶291 (listing questions of law and fact common to the class in *Under Armour*).  On those grounds alone, consolidation is warranted.

It is of no moment that *Under Armour* does not allege "improper accounting practices" or "material weaknesses in internal control over financial reporting" as instruments of defendants' scheme to show consistent quarter-after-quarter growth despite weakening demand.  Nor can Mr. Patel escape consolidation by crafting a complaint that selects a class period which extends beyond the end-date of the *Under Armour* class period or by naming additional defendants.[8]  Simply put, Mr.

---

[7]    *See generally*, 9A Wright & Miller, Fed. Practice & Proc. §2384 (3d ed.) ("Consolidation is not barred simply because the plaintiffs may be relying on different legal theories or because there are some questions that are not common to all the actions; the critical consideration, as in other contexts under the Federal Rules, *is whether there is at least one common question of law or fact to justify bringing the actions together*"); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 432-33 (S.D. Tex. 2010) (consolidating seven securities fraud class actions where "there are significant differences among the claims in the various cases, there are also substantial commonalities, and they involve 'overlapping [d]efendants and a common core of facts and legal issues'").

[8]    *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003) ("Differences in class periods, parties, or damages among the suits do not necessarily defeat

- 5 -

Patel's complaint focuses on the latest development in the longer story told by Aberdeen regarding defendants misleading the public about the strength of Under Armour's core business while masking slowing demand to prevent Under Armour's 20-plus quarter streak of at least 20% net revenue growth from coming to an end, it **does not** involve a distinct set of core events. In such instances, courts do not hesitate to consolidate securities class actions. *See* n.8, *supra*.[9] The primary authority relied on by Mr. Patel, *Minter v. Wells Fargo Bank, N.A.*, 2012 WL 1963347, at \*1 (D. Md. May 30, 2012), involved a court rejecting a request to join two separately-litigated cases for trial due to the

consolidation, so long as the essential claims and facts alleged in each case are similar. . . . **Any differences** in class period length or damages do not detract from the fact that all the actions involve common factual questions and allegations."); *MicroStrategy*, 110 F. Supp. 2d at 431 ("While most complaints allege a class period terminating on March 20, 2000, some allege periods ending much later. In addition, the suits differ widely with respect to named individual defendants, and only two complaints allege a claim against the firm's auditor, PricewaterhouseCoopers. Yet, none of these minor differences detract from the overwhelming factual and legal similarities among the cases."). *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 205 (E.D.N.Y. 2019) (consolidating securities fraud class action despite non-overlapping defendants and a class period that began two years earlier than that of other action, because "same pattern of alleged misconduct [wa]s present over both class periods" such that the one action's additional two years of allegations about misstatements, although couched in different SEC filings, were similar); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2009) (same); *see also Hughes v. J.P. Morgan Chase Bank*, N.A., 2016 WL 6476278, at \*1 (D. Md. Nov. 2, 2016) (Bennett, J) ("at least one common defendant" provided a basis for consolidation).

[9]   *Synergy*, is particularly instructive due to its recency and because it also involved securities class actions where consolidation was opposed on the same grounds as here: different class periods (with only two months of overlap) and differences in the allegations, misstatements and corrective disclosures at issue in the cases. 2019 WL 6150713, at \*4. The court found consolidation appropriate because they involve common questions of fact and law. *Id*. at \*3 ("Both cases (i) stem from the same poor performance of Trulance and the same lending relationship and loan (the CRG Loan); (ii) are brought largely against the same Defendants – the only exceptions being Synergy and its CSO, Marino Garcia, which and who are excluded from the McMullen and Weber actions; (iii) assert the same causes of action – claims under the Exchange Act Sections 10(b) & 20(a); and (iv) have overlapping class periods."). The court then rejected the opposing movant's efforts to distinguish the cases based on differences in how the allegations were pled. *Id*. at \*4 ("McMullen attempts to differentiate the cases cited by arguing that the Synergy claims focus on the non-dilutive nature of the CRG Loan and the side effects of Trulance, while the McMullen claims focus on Synergy's ability to meet the covenants set forth in the CRG Loan. . . . **These purported distinctions are at their core a product of the framing of the allegations rather than true differences in the underlying subject matter** . . . .").

- 6 -

likelihood of confusing jurors charged with "compartmentalizing certain evidence that applies to one case but not the other and attempting to keep straight the differences between liability under RESPA, RICO and the FFA." *Id.* Here, not only are the same §§10(b) and 20(a) claims at issue, but the Related Actions would be consolidated at the outset of the filing of one amended complaint, resulting in common discovery, as is the norm in consolidated PSLRA cases. Tellingly, the balance of authorities cited by *Patel* where courts have denied consolidation did not involve PSLRA cases (where, as detailed below, there is often a risk of prejudice to allow the cases to proceed separately) or class actions, and did not have the degree of overlap present here. *See Patel*, ECF No. 4 at 5-6.[10]

The framework and goals of the PSLRA, which are "achieved by encouraging institutional investors to serve as lead plaintiffs in ***a single consolidated proceeding***," also weigh in favor of consolidating the Related Actions. *Synergy*, 2019 WL 6150713, at *2; *see generally* Motion at 7-8 (collecting cases). Absent this well-established principle, every PSLRA case with a subsequent development would be usurped by follow-on class action complaints carefully designed to evade courts' lead plaintiff and consolidation orders. For this reason, the case-law developed by the PSLRA precludes plaintiffs and their attorneys from bringing class actions on behalf of supposedly

---

[10]   *See Hicks v. Grove*, 2014 WL 768685, at *2 (D. Md. Feb. 25, 2014) (assault case not consolidated with the same inmate's confinement conditions case because "two cases arise from distinct events, allege different types of conduct, and are asserted against different individual defendants"); *Synovus Bank v. Coleman*, 2012 WL 178361, at *1 (W.D.N.C. Jan. 23, 2012) (consolidation of bank's cases to recover unpaid money denied where commonalities only found as to defendants' counterclaims while plaintiffs' claims were "all separate and distinct"); *Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, 2010 WL 5314543, at *6 (W.D. Va. Dec. 20, 2010) (consolidation of Truth in Lending Act cases without any common defendants denied without prejudice because there was "no compelling reason for formal consolidation"); *Ekchian v. Home Depot, Inc.*, 1997 WL 34683666, at *2 (E.D. Va. July 9, 1997) (consolidation of patent cases in vastly different stages of the litigation denied to avoid having to continue trial a second time in earlier action); *Walter E. Heller & Co. v. Tuscarora Cotton Mill*, 1974 U.S. Dist. LEXIS 13035, at *3 (M.D.N.C. Mar. 29, 1974) (consolidation of breach of contract cases stemming from different contracts denied where "any common issues of fact will relate to collateral matters only").

- 7 -

more inclusive classes once a lead plaintiff has been appointed in an earlier case against the same corporate defendant during an overlapping class period and/or concerning the same subject matter. *See* Motion at 7-10 & n.8 (collecting cases); *Synergy,* 2019 WL 6150713, at *4 (same).

Consolidation would create efficiencies through the elimination of duplicative discovery and court proceedings.  By contrast, allowing the cases to proceed separately would result in substantial risk of conflicting results in the litigations and prejudice to class members.  The risk is a near-certainty for those, like Mr. Patel himself, who are members of both classes, given that both sets of class-members will be seeking damages for an overlapping time period and will necessarily be forced to take varying positions as to why the very same Under Armour SEC reports were false and misleading.[11]  Consolidation is therefore warranted to avoid the prejudice to overlapping class members that would pervade each stage of the litigation.[12]

Mr. Patel would have the Court believe that Aberdeen "has no interest in prosecuting the *Patel* Action's claims" despite Aberdeen's clearly stated intent to incorporate the facts exposed by the *Wall Street Journal* into an amended consolidated complaint.  *Patel*, ECF No. 4 at 2.  To that

---

[11]  *See L.G. v. Brock*, 2019 WL 5085523, at *3 (D.S.C. Oct. 10, 2019) ("[A]bsent consolidation the parties face the risk of inconsistent determinations regarding the legal theories of the plaintiffs' claims asserted against identical [parties] regarding substantially similar facts."); *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 533 (S.D.N.Y. 1987) ("One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results.").

[12]  Further illustrating both the similarities between the Related Actions but also problems that may occur absent consolidation, settlement agreements regularly and recently entered into by *Patel*'s counsel would require overlapping class-members to relinquish their claims in *Under Armour* in connection with any settlement of *Patel*. *See* Declaration of Robert  R. Henssler Jr. in Support of Reply Memorandum of Law in Further Support of Lead Plaintiff's Motion to Consolidate and Vacate Notice and Lead Plaintiff Deadline, Ex. 1 at 9 (releasing "any and all Claims. . . . that directly or indirectly arise out of or relate to (i) any of the allegations, acts, transactions, facts, events, matters, occurrences,  representations or omissions involved, set forth, alleged or referred to, in the Action, or that could have been alleged in the . . . Action, and (ii) arise out of, are based upon, or relate[] to in any way the purchase, acquisition, holding, sale, or disposition of any . . . Securities during the Class Period."); Ex 2 at 10-11 (same).

- 8 -

end, Aberdeen has already started to investigate the merits of any additional potential claims extending beyond the currently alleged *Under Armour* class period. *See Synergy,* 2019 WL 6150713, at *5 ("Lead Plaintiffs (and Lead Counsel) have every incentive to pursue all of their losses – including the losses suffered in the later period of the proposed [*Patel*] and [*Kraft*] class periods if those claims are likely to be meritorious"); *In re CenturyLink Sales Practices & Sec. Litig.*, 2018 WL 1902725, at *5 (D. Minn. Apr. 20, 2018) ("the interests of the class are fully protected and there is no need to appoint separate leadership to assert the claims that [Aberdeen] has already been appointed to pursue"). Consolidation would therefore not cause prejudice to absent class members, who would benefit from the newly-discovered evidence if Aberdeen maintains control of the Related Actions. As the Court-appointed lead plaintiff that has put in substantial effort and resources into representing the putative class-members of *Under Armour*, it is ideally situated to reconcile any minor differences between the Related Actions in a subsequent consolidated complaint. Accordingly, both Rule 42 and the PSLRA dictate in favor of consolidating the Related Actions.

Finally, Mr. Patel (who purchased 1450 shares of Under Armour) argues, ironically, that putative class members would be deprived of "their right of having the most adequate plaintiff under the PSLRA" if the Related Actions are consolidated under the leadership of Aberdeen, which not only purchased nearly 500,000 shares during the same *Under Armour* class period, but was actually appointed lead plaintiff after being found the "most adequate plaintiff," as required by the PSLRA. *See Under Armour*, ECF No. 13; 15 U.S.C. §78u-4 ("the court shall appoint the most adequate plaintiff as lead plaintiff"). At bottom, Mr. Patel's makes a circular argument that *Patel* class members are prejudiced by consolidation if his republished notice is vacated, because his complaint alleges "factually distinct claims which are not suitable for consolidation." *Patel*, ECF No. 4 at 12.

4812-0947-0126.v1

That argument can be rejected because Aberdeen has demonstrated that consolidation of the Related Actions *is* appropriate.

## III.     CONCLUSION

The eventual consolidation of the Related Actions will be warranted under both Rule 42 and the PSLRA because of the overwhelming common questions of law and fact, and the prejudice that absent class members would incur if the cases proceeded separately.   Accordingly, Aberdeen requests that: (1) the Court vacate the *Patel* notice and corresponding lead plaintiff deadline; and (2) when Aberdeen's Rule 60(b) Motion and accompanying Rule 62.1 Request are ruled upon and, if granted, the Fourth Circuit returns jurisdiction to this Court, that it consolidate the Related Actions.

 DATED:  December 16, 2019                      Respectfully submitted,

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               MARK SOLOMON
                                               ROBERT R. HENSSLER JR.
                                               CHRISTOPHER R. KINNON

                                                      s/ ROBERT R. HENSSLER JR.
                                                     ROBERT R. HENSSLER JR.

                                               655 West Broadway, Suite 1900
                                               San Diego, CA  92101
                                               Telephone:  619/231-1058
                                               619/231-7423 (fax)
                                               marks@rgrdlaw.com
                                               bhenssler@rgrdlaw.com
                                               ckinnon@rgrdlaw.com

4812-0947-0126.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
JACK REISE
MARK J. DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
jreise@rgrdlaw.com
mdearman@rgrdlaw.com

*Lead Counsel for Plaintiff*

SILVERMAN THOMPSON SLUTKIN
  & WHITE LLC
Andrew C. White, Federal Bar No. 0821
awhite@mdattorney.com
William Sinclair, Federal Bar No. 28833
bsinclair@mdattorney.com
Pierce C. Murphy, Federal Bar No. 30030
pmurphy@mdattorney.com
201 N. Charles Street, 26th Floor
Baltimore, MD  21201
Telephone:  410/385-2225
410/547-2432 (fax)

*Local Counsel*

- 11 -

4812-0947-0126.v1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

s/ ROBERT R. HENSSLER JR.
ROBERT R. HENSSLER JR.