UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| KIRTAN PATEL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNDER ARMOUR, INC., KEVIN A. PLANK, PATRIK FRISK, DAVID E. BERGMAN, and LAWRENCE "CHIP" MOLLOY,<br><br>Defendants. | Case No: 1:19-cv-03209-RDB<br><br><br>CLASS ACTION |
| PHILLIP KRAFT, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNDER ARMOUR, INC., KEVIN A. PLANK, PATRIK FRISK, DAVID E. BERGMAN, and LAWRENCE "CHIP" MOLLOY,<br><br>Defendants. | Case No: 1:19-cv-03502-RDB |

[Additional caption on next page]

1

JEFFREY WARONKER, Individually and on behalf of all others similarly situated,

      Plaintiff,

      v.

UNDER ARMOUR, INC., KEVIN A. PLANK, PATRIK FRISK, DAVID E. BERGMAN, BRAD DICKERSON and LAWRENCE "CHIP" MOLLOY,

      Defendants.

Case No: 1:19-cv-03581-RDB

# MEMORANDUM OF LAW IN SUPPORT OF GIL MAGANA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF <u>HIS SELECTION OF COUNSEL</u>

Plaintiff Gil Magana ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    consolidating the above-captioned actions;

(b)    appointing Movant as Lead Plaintiff for the class of all purchasers of the publicly traded securities of Under Armour, Inc. ("Under Armour" or the "Company") between September 16, 2015 and November 1, 2019,[1] both dates inclusive (the "Class Period"); and

(c)    approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel and Movant's selection of Murphy, Falcon & Murphy as Liaison Counsel for the Class.

## INTRODUCTION AND BACKGROUND

This action was commenced on November 6, 2019 against the Company, Kevin A. Plank ("Plank"), Patrik Frisk ("Frisk"), David E. Bergman ("Bergman"), and Lawrence "Chip" Molloy ("Molloy") for violations under the Exchange Act. That same day, an early notice pursuant to the PSLRA was published advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as

---

[1] The actions *Patel v. Under Armour, Inc., et al.*, Case No. 1:19-cv-03209-RDB ("*Patel* Action") and *Kraft v. Under Armour, Inc., et al.*, Case No. 1:19-cv-03502-RDB ("*Kraft*" Action) have a class period of August 3, 2016 through November 1, 2019, inclusive. The action *Waronker v. Under Armour, Inc., et al.*, Case No. 1:19-cv-03581-RDB ("*Waronker* Action") has a class period of September 16, 2015 through November 1, 2019. A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

Lead Plaintiff. *See* Ex. 1 hereto. The related *Kraft* Action and *Waronker* Action were commenced on December 9, 2019 and December 17, 2019, respectively. Each of the actions allege violations under the Exchange Act and name Under Armour, Plank, Frisk, Bergman, and Molloy as defendants. The *Waronker* Action also names Brad Dickerson as defendant.

Defendant Under Armour purports to develop, market, and distribute branded performance apparel, footwear, and accessories for men, women, and youth. In addition, the Company also purports to offer accessories, which include gloves, bags, and headwear; and digital fitness subscriptions, as well as digital advertising through MapMyFitness, MyFitnessPal, and Endomondo platforms.

The complaints allege that during the Class Period Defendants made false and misleading statements and/or failed to disclose that: (1) Under Armour shifted sales from quarter to quarter to appear healthier, including to keep pace with their long-running year-over-year 20% net revenue growth; (2) undisclosed to the investing public, the Company had been under investigation by and was cooperating with the U.S. Department of Justice ("DOJ") and U.S. Securities and Exchange Commission ("SEC") since at least July 2017; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading at all relevant times.

On August 3, 2016, the Company filed its quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2016 (the "2Q 2016 10-Q"). The 2Q 2016 10-Q was signed by Defendant Molloy. Attached to the 2Q 2016 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Plank and Molloy attesting to the accuracy of the financial statements and the disclosure of all fraud. The 2Q 2016 10-Q discussed Under Armour's revenue recognition and internal controls in positive and banal terms.

On October 25, 2016, the Company issued a press release entitled "Under Armour Reports Third Quarter Net Revenues Growth of 22%; Reiterates Full Year Net Revenues Outlook of $4.925 Billion." In that press release Defendant Plank touted Under Armour's ongoing 20-plus quarter streak of "at least 20% net revenue growth."

On February 23, 2017, February 28, 2018, and February 25, 2019, the Company filed its annual reports on Form 10-K with the SEC for the years ended December 31, 2016, 2017, and 2018, respectively (the "10-Ks"). The 10-Ks were signed by Defendants Plank and Bergman. Attached to the 10-Ks were SOX certifications signed by Defendants Plank and Bergman attesting to accuracy of the financial statements and the disclosure of all fraud. The 10-Ks discussed Under Armour's revenue recognition and internal controls in positive and banal terms.

Then, on November 3, 2019, the Wall Street Journal reported on DOJ and SEC investigations into Under Armour's accounting practices and related disclosures. The article, entitled "Under Armour Is Subject of Federal Accounting Probes," noted that the investigations concerned whether Under Armour shifted sales from quarter to quarter to appear healthier. That day the Company confirmed that it had been cooperating with the DOJ and the SEC since July 2017.

On this news, Class C shares of Under Armour (symbol: UA) fell $3.47 per share, or 18.35%, to close at $15.44 per share, and Class A shares of Under Armour (symbol: UAA) fell $4.00 per share, or 18.92%, to close at $17.14 per share, on November 4, 2019, damaging investors. As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Each of the above-captioned related actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by substantially similar Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

### II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable

presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

A. *Movant Is Willing to Serve as Class Representative*

Movant has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

B. *Movant Has the Largest Financial Interest in the Action*

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that …has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses."

*Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost $81,256.97 in connection with his purchases of Under Armour securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Under Armour securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

*C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure*

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1.    Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.,* 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about Under Armour's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.    Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation,* 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained

substantial financial losses from investments in Under Armour securities and is therefore, extremely motivated to pursue claims in this action.

   *D. Movant Is Presumptively the Most Adequate Plaintiff*

   The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

   (aa) will not fairly and adequately protect the interests of the class; or

   (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

   The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

## III.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

   The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

   Movant has selected The Rosen Law Firm, P.A. as Lead Counsel and Murphy, Falcon & Murphy as Liaison Counsel. The firms have been actively researching Movant's and Class Plaintiffs' claims, including filing the initial complaint, as well as reviewing publicly available

financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firms are experienced in the area of securities litigation and class actions, and have successfully prosecuted securities litigation, securities fraud class actions, and other complex litigation and obtained substantial recoveries on behalf of investors. *See* Exs. 4 and 5 hereto.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff of the Class; (3) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel and Murphy, Falcon & Murphy as Liaison Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: January 6, 2020

Respectfully submitted,

By: /s/ Nikoletta S. Mendrinos
Nikoletta S. Mendrinos (18961)
**MURPHY, FALCON & MURPHY**
One South Street, 30th Floor
Baltimore, MD 21202
Telephone: (410) 539-6500
Fax: (410) 539-6599
nikoletta.mendrinos@murphyfalcon.com

*Liaison Counsel for Plaintiff*

11

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*
*(Pro hac vice forthcoming)*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Nikoletta S. Mendrinos