**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| KIRTAN PATEL, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> UNDER ARMOUR, INC., et al. <br><br>     Defendants. | Case No.: 1:19-cv-03209-RDB <br><br> Hon. Richard D. Bennett |
| PHILLIP KRAFT, Individually and on Behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> UNDER ARMOUR, INC., et al. <br><br>     Defendants. | Case No.: 1:19-cv-03502-RDB <br><br> Hon. Richard D. Bennett |
| JEFFREY WARONKER, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> UNDER ARMOUR, INC., et al. <br><br>     Defendants. | Case No.: 1:19-cv-03581-RDB <br><br> Hon. Richard D. Bennett |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF JULIE HSU FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF SELECTION OF COUNSEL</u>**

Movant Julie Hsu ("Movant"), on behalf of herself and all similarly situated persons, respectfully submits this Memorandum of Law in support of her motion ("Motion"): (1) consolidating the above-captioned actions (the "Actions")[1]; (2) appointing Movant as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired securities of Under Armour, Inc. ("Under Armour" or the "Company") from August 3, 2016 and November 1, 2019, inclusive (the "Class", who purchased during the "Class Period"); (3) approving Movant's selection of the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel for the putative class; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court are three related securities class Actions brought on behalf of all persons who purchased or otherwise acquired Under Armour securities during the Class Period.[2] Plaintiffs in the Actions allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5 against the Company, Kevin A. Plank ("Plank"), Patrick Frisk ("Frisk"), David E. Bergman ("Bergman"), and Lawrence "Chip" Molloy ("Molloy"), (collectively, the "Defendants" and without the Company, the "Individual Defendants").

---

[1] The "Actions" pending in this Court are: *Kirtan Patel v. Under Armour, Inc., et al.*, C.A. No. 1:19-cv-03209-RDB (D. Md. Nov. 6, 2019) (the "*Patel* Action"); *Phillip Kraft v. Under Armour, Inc., et al.*, C.A. No. 1:19-cv-03502-RDB (D. Md. Dec. 09, 2019) (the "*Kraft* Action"); and *Jeffrey Waronker v. Under Armour, Inc., et al.,* C.A. No. 1:19-cv-03502-RDB (D. Md. Dec. 17, 2019) (the "*Waronker* Action").

[2] The *Patel* and *Kraft* Actions poses a Class Period of August 3, 2016 through November 1, 2019, inclusive. The *Waronker* Action expanded the Class Period to cover all securities of Under Armour purchased between September 16, 2016 through November 1, 2019. Movant adopts the most inclusive class period. *See Rauch v. Vale S.A.,* 378 F. Supp. 3d 198, 208, n.11 (E.D.N.Y. 2019) ("For the purposes of appointing lead plaintiff in cases involving two potential class periods, courts use the longer class period in the analysis").

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) (the "PSLRA"), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(aa)-(cc); *see also Tchatchou v. India Globalization Capital, Inc.,* No. 8:18-cv03396-PWG, 2019 WL 1004591, at *3 (D. Md. Feb. 28, 2019). Movant has lost approximately $269,005.75 as a result of the alleged fraud during the Class Period.[3] Movant believes that she has the largest financial interest in the outcome of this case. Moreover, Movant satisfies the requirements of Rule 23 in that her claims are typical of the claims of the Class, and she will fairly and adequately represent the interests of the Class.

For the reasons summarized herein and discussed more fully below, Movant's Motion should be approved in its entirety.

## FACTUAL BACKGROUND[4]

Under Armour develops, markets, and distributes branded performance apparel, footwear and accessories for men, women, and youth. ¶ 7. The Company also offers accessories, which include gloves, bags, and headwear; and digital fitness subscriptions, as well as digital advertising through MapMyFitness, MyFitnessPal, and Endomondo platforms *Id*.

---

[3] Certifications identifying Movant's transactions in Under Armour, as required by the PSLRA, as well as charts identifying her losses, are attached to the Declaration of Nicholas I. Porritt, dated January 6, 2020 ("Porritt Decl."), as Exhibits A and B, respectively.

[4] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Patel* Complaint") filed in the *Patel* Action. Citations to "*Waronker* ¶ __" are to paragraphs of the Class Action Complaint (the "*Waronker* Complaint") filed in the *Waronker* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in all of the above-captioned Complaints. The facts set forth in the three above-captioned Actions' Complaints are incorporated herein by reference.

2

Under Armour is incorporated in Maryland and its principal executive office is located at 1020 Hull Street, Baltimore, Maryland. ¶ 8. The Company's securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "UA" (Class C Stock) and "UAA" (Class A Stock). *Id*.

On August 4, 2015, Under Armour filed its quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2015 (the "2Q 2015 10-Q") *Waronker* ¶ 14. In the 2Q 2015 10-Q, Under Armour disclosed that its Disclosure Controls and Procedures had been evaluated and concluded that they were effective. Waronker ¶ 16. The Company also discussed that net revenue and large porions of the Company's income are driven mainly by sales volume in the last two quarters of the year. *Waronker* ¶ 15. Over the next three and a half years, the Company's financial reports and press releases continually touted the sales from quarter to quarter in efforts to maintain their long-running year-over-year 20% net revenue growth. *Waronker* ¶¶ 17-61; ¶¶ 18-35.

Throughout the Class Period, Defendants issued statements that were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations and prospects. ¶ 36. Specifically, Defendants failed to disclose to investors that: (1) Under Armour shifted sales from quarter to quarter to appear healthier, including to keep pace with their long-running year-over-year 20% net revenue growth; (2) undisclosed to the investing public, the Company had been under investigation by and cooperating with the U.S. Department of Justice and U.S. Securities and Exchange Commission since at least July 2017; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id*.

On November 3, 2019, the Wall Street Journal reported on U.S. Department of Justice and Securities and Exchange Commission investigations into Under Armour's accounting practices

and related disclosures. ¶ 37. The article, entitled "Under Armour Is Subject of Federal Accounting Probes," noted that the investigations are concerning whether Under Armour shifted sales from quarter to quarter to appear healthier. *Id*. On that same day, Under Armour confirmed to the Wall Street Journal that it had been cooperating with the U.S. Department of Justice and Securities and Exchange Commission since July 2017. *Id*. On this news, Class C shares of Under Armour (UA) fell $3.47 per share or 18.35% to close at $15.44 per share and Class A shares of Under Armour (UAA) fell $4.00 per share or 18.92% to close at $17.14 per share on November 4, 2019, damaging investors. ¶ 39.

**ARGUMENT**

**I.    CONSOLIDATION OF THE RELATED ACTIONS IS APPROPRIATE**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered. 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions."  Id.

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact.  See Fed. R. Civ. P. 42(a).  The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct.  The Actions name the same parties as defendants.  Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions.  Accordingly, consolidation under Rule 42(a) is appropriate.

4

## II.    APPOINTING MOVANT AS LEAD PLAINTIFF IS APPROPRIATE

### A.    The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. §78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a) and (a)(3)(B).

The PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall cause to be published in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. 15 U.S.C. §78u-4(a)(3)(A).

Under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by a purported class member in response to the notice and appoint as lead plaintiff the plaintiff that the court determines to be "most capable of adequately representing the interests of class members." The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)    has either filed the complaint or made a motion in response to a notice;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and sustained, to the best of her knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against her. Therefore, Movant is entitled to the presumption that she is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the consolidated action.

### B.    Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because she satisfies all of the requirements of the PSLRA. Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class and satisfies the typicality and adequacy requirements of Rule 23.

### 1.    Movant Filed a Timely Motion

On November 6, 2019, which was within twenty (20) days of the filing of the first-filed complaint as required by 15 U.S.C. §78u-4(a)(3)(A)(i), plaintiff in the *Patel* Action published notice of that action over *Business Wire*, a widely circulated national business-oriented wire service. *See* Porritt Decl., Ex. C. Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on January 6, 2020. Pursuant

to the PSLRA and within the requisite time frame after publication of the required notice, Movant herein timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2.    Movant Has the Largest Financial Interest in the Relief Sought By the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Porritt Decl., Ex. B. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See India Globalization Capital, Inc.,* 2019 WL 1004591, at *3. Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. §78u-4(e).

Within the Class Period, Movant purchased Under Armour securities in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. Movant suffered substantial losses of approximately $269,005.75 as a result of the Defendants' alleged fraudulent statements. *See* Porritt Decl., Ex. B. Movant, thus, has a significant financial interest in the outcome of this case. To the best of her knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

7

### 3.    Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See See Klugmann v. Am. Capital Ltd.,* No. PJM 09-5, 2009 WL 2499521, at *5 (D. Md. Aug. 13, 2009). *See also Haung v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004)

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying her appointment as lead plaintiff.

### (i)    Movant's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of

8

conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See Id.*[5]

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete, nor conflict, with the claims of the other Class members. Movant, like the other members of the Class, acquired Under Armour securities during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements and was damaged thereby. Thus, her claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and her losses resulted from the Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). Additionally, Movant is not subject to any unique defenses and there is no evidence of any conflicts between Movant and the other members of the Class.

Movant therefore satisfies the required *prima facie* showing of the typicality requirement of Rule 23 for purposes of this Motion.

**(ii)    Movant Will Fairly and Adequately Protect the Interests of the Class**

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must also "fairly and adequately protect the interests of the class." Adequate representation will be found if the representative has: (a) retained able and experienced counsel; and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole. *See India Globalization,* 2019 WL 1004591, at *6 (citing Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988) ([Court should consider if Movant] "has the ability and incentive to represent

---

[5] Further, although not relevant to the present motion, a finding of commonality frequently supports a finding of typicality and *vice versa*. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

9

the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class."). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B).

Movant has met both of the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative class. Not only is there no evidence of conflict between Movant's interests and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the consolidated action based on the large financial losses she suffered as a result of the wrongful conduct alleged therein. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action."). Indeed Movant has already taken significant steps demonstrating that he recognizes and will protect the interests of the Class, including: (1) executing certifications detailing her Class Period transactions and expressing her willingness to serve as Class representative; (2) moving this Court to be appointed lead plaintiff; and (3) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud. Therefore, Movant will prosecute the consolidated action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, she is the presumptive lead plaintiff in

accordance with §78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this consolidated action.

### III.    APPOINTING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class.

As set forth in the accompanying firm résumé (Porritt Decl. Ex. D), Levi & Korsinsky is a highly accomplished firm and currently acting as lead counsel in a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as these and are well-qualified to represent the Class. Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Actions; (2) appoint Movant as Lead Plaintiff on behalf the Class; (3) approve Movant's selection of counsel, Levi & Korsinsky, as Lead Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

*[Signature on Following Page]*

Dated: January 6, 2020

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ *Nicholas I. Porritt*
Nicholas I. Porritt (457611)
Adam M. Apton *(pro hac vice* forthcoming*)*
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Lead Counsel for Movants and [Proposed]*
*Lead Counsel for the Class*

12

**CERTIFICATE OF SERVICE**

I, Nicholas I. Porritt, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 6th day of January 2020.

/s/ *Nicholas I. Porritt*
Nicholas I. Porritt

13